# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| SONYA D. DEES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 1:13-cv-1997-WTL-TAB |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Sonya D. Dees requests judicial review of the final decision of the Acting Commissioner of the Social Security Administration (the "Commissioner"), denying her application for Supplemental Social Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). The Court now rules as follows.

## I. PROCEDURAL HISTORY

Dees filed her application for SSI on May 2, 2011, alleging disability beginning March 1, 2011, due to breathing problems associated with asthma and other lung problems. Dees' application was initially denied on June 28, 2011, and again upon reconsideration on October 12, 2011. Thereafter, Dees requested a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on September 11, 2012, via video conference before ALJ Julia D. Gibbs. Dees and her counsel appeared in Indianapolis, Indiana, and the ALJ presided over the hearing from Falls Church, Virginia. During the hearing, Ray O. Burger also testified as a vocational expert. On October 19, 2012, the ALJ issued a decision denying Dees' application for benefits. The

Appeals Council upheld the ALJ's decision and denied a request for review on November 1, 2013. This action for judicial review ensued.

## II.     EVIDENCE OF RECORD

The medical evidence of record in this case is fairly sparse, and consists mostly of treatment records from Dees' visits to a hospital emergency room ("ER").

On January 22, 2011, Dees visited the ER complaining of a cough and chest and nasal congestion. A chest x-ray was indicative of pneumonia. She was diagnosed with pneumonia and an exacerbation of asthma. On February 26, 2011, she visited the ER with similar complaints and additional imaging reflected similarly.

On March 7, 2011, Dees was taken to the ER by ambulance. She complained of worsening shortness of breath. She was diagnosed with an exacerbation of asthma.

From March 15 to March 17, 2011, Dees was treated in the hospital for shortness of breath. Tests indicated "patchy airspace disease, while the pulmonary function study was characterized as consistent with moderate obstructive lung disease, mild gas trapping, and mildly abnormal distribution of ventilation with moderate diffusion." Tr. at 14. She was diagnosed with allergic asthma, emphysema, and atypical-community acquired pneumonia.

On April 27, 2011, Dees was treated in the ER for wheezing.

On April 28, 2011, Dees followed up with Dr. Cynthia Ebini to establish care. Dr. Ebini diagnosed Dees with emphysema. However, upon examination she observed normal breath sounds, no wheezing, and no rales or crackles in Dees' lungs.

On June 6, 2011, Dees underwent a physical consultative exam with Dr. Bilal Salfadi. He diagnosed her with emphysema and asthma. He also advised that Dees should "seek further care as she ha[d] diffuse wheezing." *Id.* at 337.

On June 22, 2011, Dees underwent a pulmonary function study. The results of the test, which are discussed in further detail below, indicated "significant abnormalities" in the function of her lungs, "though [her breathing] slightly improved with a bronchodilator." *Id.* at 15.

On August 15, 2012, Dees was treated in the ER for a cough, nasal congestion, wheezing, and related symptoms. Notes indicate that she had "ran out of meds." *Id.* at 399. Dees was diagnosed with an acute COPD exacerbation.

### III. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled.

3

416.920(a)(4)(iii). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

On review, the ALJ's findings of fact are conclusive and must be upheld by the court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and the court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ is required to articulate only a minimal, but legitimate, justification for he acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while "she is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1177.

## IV. THE ALJ'S DECISION

At step one, the ALJ found that Dees had not engaged in substantial gainful activity since May 2, 2011, her application date. At step two, the ALJ concluded that Dees suffered from the following severe impairments: asthma, COPD, and emphysema. At step three, the ALJ determined that Dees' severe impairments did not meet or medically equal a listed impairment. At step four, the ALJ concluded that Dees had the residual functional capacity ("RFC") to perform sedentary work "with no standing or walking more than fifteen minutes at a time, in a clean environment with no excessive exposure to gas, fumes, dust, or other environmental irritants." Tr. at 13. Given this RFC, and taking into account Dees' age, education, and work

experience, the ALJ determined at step five that Dees could perform jobs existing in significant numbers in the national economy, those being a cashier, an office clerk, and a telemarketer. Accordingly, the ALJ concluded that Dees was not disabled as defined by the Act from May 2, 2011, through the date of her decision.

## V. DISCUSSION

Dees advances several objections to the ALJ's decision; each is addressed below.

### A. Listings 3.02 and 3.03

First, Dees argues that she "met her burden of . . . proving that her combined pulmonary impairments met or medically equaled Listing 3.02 (pulmonary insufficiency) or Listing 3.03 (asthma-obstructive airway disease)." Dees' Br. at 6. The Court does not agree.

To satisfy Listing 3.02A (the prong most relevant to Dees' argument), Dees' must show that she suffers from a chronic obstructive pulmonary disease with forced expiratory volume in one second ($FEV_1$) equal to or less than 1.15 liters. The Listings also provide that pulmonary testing "should be repeated after administration of an aerosolized bronchodilator," and "[t]he highest values of the $FEV_1$ . . . should be used to assess the severity of the respiratory impairment." 20 C.F.R. Pt. 404, Subpart P, App. 1 § 3.00(E). On June 21, 2011, Dees' $FEV_1$ value was measured at 1.14 liters. After administration of a bronchodilator, however, her $FEV_1$ value was measured at 1.39 liters. Dees argues that her $FEV_1$ value of 1.14 liters "proves" disability, and the ALJ "ignored" this evidence. Dees is mistaken; again, "only the highest post-bronchodilator result is used to assess the severity of the respiratory impairment." *Eskew v. Astrue*, 462 F. App'x 613, 615 (7th Cir. 2011). Here, the ALJ correctly ignored the pre-bronchodilator result and properly concluded that the 1.39 $FEV_1$ value was too high to meet Listing 3.02A. *Id.* (reaching the same conclusion on similar facts).

5

The ALJ also correctly concluded that the requirements of Listing 3.03 were not met. Listing 3.03 requires evidence of chronic asthmatic bronchitis, evaluated under the criteria for Listing 3.02A, discussed above, or evidence of "[a]ttacks . . . in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year." 20 C.F.R. Pt. 404, Subpart P, App. 1 § 3.03B. "Attacks" are further defined by the Listings as "prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting." *Id.* at § 3.00C. "The medical evidence must also include information documenting adherence to a prescribed regimen of treatment as well as a description of physical signs." *Id.* Dees argues "that she had six attacks within a twelve month period." Dees' Br. at 7. She cites the five hospital stays she had in 2011 (one that lasted two days) as evidence of the attacks. She does not, however, identify how these hospital visits satisfied the definition of "attacks," or how Dees satisfies the "adherence to a prescribed regimen of treatment" requirement. The Court will not make Dees' argument for her, nor will the Court scour the record in search of evidence to support such an argument. Regardless, the ALJ specifically considered and discussed these hospital visits in her decision. Tr. at 14-15. Thus, the ALJ did not "refuse to acknowledge" the hospital visits, as Dees suggests.

In short, the Court finds that the ALJ's consideration of Listings 3.02 and 3.03 was not improper under the circumstances, and remand is not warranted.

### B. Failure to Call Medical Expert

Dees also argues that "[t]he ALJ's failure to summon a medical advisor (pulmonologist) to testify whether [Dees'] combined impairments medically equaled any Listed impairment (such

as Listings 3.02, 3.03) requires reversal of the denial decision." *Id.* at 10. Dees specifically takes issue with the fact that the agency's reviewing physicians examined Dees prior to her pulmonary evaluation on August 15, 2012. The ALJ, however, did not abuse her discretion in failing to call a medical expert to testify at the hearing.

Whether a claimant's condition equals a listed impairment is "strictly a medical determination," and "the focus must be on medical evidence." *Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999). However, the court gives deference to an ALJ's decision about how much evidence is sufficient to develop the record and what measures are needed to accomplish that goal. *See Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2007); *Kendrick v. Shalala*, 998 F.2d 455, 458 (7th Cir. 1993). Thus, an ALJ's decision to call a medical expert is discretionary, 20 C.F.R. § 416.927(f)(2)(iii), and an ALJ is not required to consult a medical expert if the medical evidence in the record is adequate to render a decision on the claimant's disability. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004).

The Court is unsure why the treatment notes from August 15, 2012, are particularly significant and require additional review by a physician. On that date, Dees visited the ER complaining of a cough, nasal congestion, wheezing, and related symptoms. Not unlike her other visits to the ER, Dees was diagnosed with pneumonia and an acute COPD flare-up before she was released with an antibiotic and bronchodilating medication. Dees fails to articulate in any meaningful way why this treatment record is important, and the Court, without more, will not reverse this matter simply because the ALJ did not call a pulmonologist to consider "*all* of the evidence in the record." *See also D.N.M. ex rel. Brame v. Colvin*, No. 1:13-CV-00884-RLY, 2014 WL 4636390, at *7 (S.D. Ind. Sept. 16, 2014) ("His argument is: 'Presumably if they had reviewed all of the evidence they would have reasonably determined the claimant was totally

7

disabled.' . . . That is certainly not the Court's presumption. While it might be [the plaintiff's] presumption, it was definitely his *burden* to show that the nature of these items of evidence, compared to the other evidence the state agency physicians reviewed, required the ALJ to obtain a supplemental medical opinion.") (emphasis in original).

### C. Credibility Determination

Next, Dees argues generally that the ALJ's credibility determination was "patently erroneous" because it was "contrary [to] the evidence and contrary to Social Security Ruling 96-7p." Dees' Br. at 13. She asserts that "the ALJ ignored or mischaracterized the evidence . . . which proved [that Dees] was totally disabled." *Id.* Again, the Court does not agree.

In determining credibility, an ALJ must consider several factors, including the claimant's daily activities, level of pain or symptoms, aggravating factors, medication, treatment, and limitations, *see* 20 C.F.R. § 404.1529(c); S.S.R. 96–7p, and justify her finding with specific reasons. *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009). "Furthermore, the ALJ may not discredit a claimant's testimony about [her] pain and limitations solely because there is no objective medical evidence supporting it." *Id.* (citations omitted). Of course, district courts "afford a credibility finding 'considerable deference,' and overturn [a finding] only if 'patently wrong.'" *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quoting *Carradine v. Barnhart*, 36 F.3d 751, 758 (7th Cir. 2004)).

For the most part, Dees seems to fault the ALJ for using boilerplate language to explain her credibility finding. Although the Court shares in the sentiments expressed by the Seventh Circuit regarding the meaninglessness of Social Security "templates," such as the one used here, *See, e.g.*, *Bjornson v. Astrue*, 671 F.3d 640, 645-46 (7th Cir. 2012), given the facts of this case, the ALJ's credibility determination was appropriate. She considered the relevant factors and

8

justified her finding with specific reasons. For example, the ALJ noted that Dees' daily activities of caring for her grandson, preparing meals, performing household chores, and shopping were not consistent with complaints of complete disability. Additionally, the ALJ did not "ignore or mischaracterize the evidence" as Dees alleges. As discussed above, her consideration of the medical evidence at steps two, three, and four was appropriate. Accordingly, remand is not warranted.

### D. Step Five Determination

Lastly, Dees argues that "the ALJ's [RFC] assessment did not accurately describe [Dees'] impairments." Dees' Br. at 17. Thus, according to Dees, the ALJ's determination at step five was not supported by substantial evidence. This argument, however, is premised on the idea that Dees' impairments are disabling and more severe than what was found by the ALJ. As noted above, however, the ALJ's consideration of the Dees' impairments was not improper. Additionally, the ALJ's determination at step five accounted for Dees' documented impairments, RFC, age, education, and work experience, as well as the vocational expert's written testimony. Accordingly, the ALJ's step five analysis does not warrant remand.

### VI. CONCLUSION

In this case, the ALJ satisfied her obligation to articulate the reasons for her decision, and that decision is supported by substantial evidence in the record. Accordingly, the decision of the ALJ is **AFFIRMED**.

SO ORDERED: 1/09/15

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.